# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ENRIQUE AVINA,
as Parent and Guardian of XXXX, a minor,

        Plaintiff,

    -vs-                                                                                                      Case No. 13-C-1433

TODD BOHLEN,
MIKE ROHDE,
EDWARD A. FLYNN,
CITY OF MILWAUKEE, and
DOES 1-100,

        Defendants.

# DECISION AND ORDER

The Plaintiff, Enrique Avina ("Avina") as the parent and guardian of his minor son (the "minor"), filed this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985(2) with supplemental state law negligence, assault and battery, false imprisonment, and malicious prosecution claims. The action comes before the Court on the expedited non-dispositive motion to compel filed by Defendants Todd Bohlen ("Bohlen"), Mike Rohde ("Rohde"), Edward A. Flynn ("Flynn"), the City of Milwaukee ("Milwaukee"), and Does 1-100 (ECF No. 51) and the parties' proposed stipulated protective order (ECF No. 54).

## Factual Background

Some limited background provides context for this decision. The action

arises out of an October 1, 2012, encounter between the minor, who is Hispanic, and Milwaukee Police Department officers Bohlen and Rohde. The minor, having been told to leave the grounds of Milwaukee's South Division High School, was riding his bicycle on public property. During the encounter, and allegedly due to Rohde's use of excessive force, the minor sustained a broken arm. The officers transported the minor to the hospital, and Bohlen and Rohde allegedly misrepresented the cause of the break "potentially causing a delay in his treatment or a misdiagnosis." (Second Am. Compl. ¶ 21) (ECF No. 24.) They also arrested the minor and issued municipal misdemeanor charges against him which were later dismissed. As a consequence of such actions, the minor allegedly sustained physical injury, physical pain and suffering, mental anguish, severe emotional distress, and embarrassment for which Avina seeks damages.

## MOTION TO COMPEL

The Defendants seek an order compelling Avina to produce signed releases for the minor's medical records covering the ten years prior to the incident to the present,[1] and his school records from 2005, when he was in

---

[1] The medical release form provides in pertinent part:

> 4. **Type of Information to be Disclosed**: Your **FILE** from October 1, 2002 to the present, including, but not limited to, any and all individually identifiable health information, including: medical records; reports;

sixth grade, to the present.[2] The Defendants maintain that the minor's claim

>> photographs, slides, and videotapes; correspondence; diagnostic testing including x-ray films, MRI or CT scans, EKGs, EEGs, and lab work; progress notes; physician orders; nurses notes; referrals; consultation reports; diagnoses; notes; pharmaceutical records; records relating to social history; employment information; school records; alcoholism/drug abuse care or treatment records; treatment of developmental disability; psychiatric evaluations, diagnoses and treatment; physical, occupational and speech therapy progress reports; psychological tests and evaluation reports; vocational evaluations and records; insurance documents; bills; invoices; or other non-medical writings in your possession or under your control now or in the future pertaining to the above-identified patient's physical or mental condition, or any treatment the foregoing patient received from you at any time. **Scope of Release:** The requested materials in your file including those generated by other health care providers, attorneys, insurers or individuals, including reports, notes and correspondence received from third parties.
>
> 5. **This authorization does not release**: records pertaining [to] sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).

(Aff. of Jenny Yuan, Ex. 5 at 3-4.) (ECF No. 52-5.)

[2] In pertinent part, the School Record Release states:

> This release authorizes you to allow Jenny Yuan, Assistant City Attorney, or her designee, to examine my school records while in attendance at any and all Milwaukee Public Schools ("MPS) from 2005 until the present (beginning from when I was in the 6th grade), including, but not limited to, my disciplinary file, attendance file, health files, and to speak with any school representative concerning my attendance at any and all MPS schools. This release does not authorize disclosure of my grades or G.P.A., though I do specifically authorize disclosure of any evaluations and comments in my file made by my teachers or any other staff at MPS.

(*Id*. at 1.)

of injury makes his medical condition before and after the incident relevant; and that the minor's high school record, including his attendance record and his disciplinary record, may contain relevant evidence or may lead to the discovery of admissible evidence.

Avina asserts that the medical release is overbroad and that the minor's entire medical record is not relevant and should be limited to the three years before and three years after the incident; whether he had a broken arm due to the incident; whether he had a broken arm or damage to an arm or shoulder prior to the incident; and information regarding emergency room or urgent care, surgeries, physical therapy, chiropractor and doctor's appointments from the date of the incident to the present. Avina also asserts that the request for the minor's educational records should be denied, citing Wis. Stat. §§ 118.125 and 118.126, the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and 34 C.F.R. Part 99. Avina further contends that a protective order should be issued with respect to all of the minor's medical and psychological records; the Court should conduct an in camera review of those records to assure that the materiality and relevance of that information outweighs the minor's right to privacy; and the Court should order the sealing of any medical or psychological information used during trial, a hearing or any motions (written or oral), citing the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") rules and Fed. R. Evid.

501.

District courts enjoy broad discretion in controlling discovery. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 813 (7th Cir. 2006). Under Fed. R. Civ. P. 26(b)(1) parties may obtain information regarding any nonprivileged matter relevant to a claim or defense. "Relevant information *need not* be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Nw. Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 930 (7th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(1)). (emphasis added.)

In federal question cases, federal law provides the rule of decision and, therefore, the federal law of privileges applies *Id.* at 926 ("[T]he evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law, Fed. R. Evid. 501"); this is true even when the plaintiff has also asserted supplemental state law claims. *See Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981).

Furthermore, federal law "does not recognize a physician-patient (or hospital-patient) privilege." *N.W. Mem'l Hosp.,* 362 F.3d at 926. The Court of Appeals for the Seventh Circuit has expressly held that HIPAA does not give rise to a physician-patient or medical records privilege. *United States v. Bek,* 493 F.3d 790, 802 (7th Cir. 2007) (citing *N.W. Mem'l Hosp.,* 362 F.3d at 926 ("We do not think HIPAA is rightly understood as an Act of Congress that creates a privilege.")).

In *Jaffee v. Redmond,* 518 U.S. 1, 8-10 (1996), the Supreme Court recognized a privilege between a psychotherapist and a patient. The privilege applies to confidential statements made between a patient and his psychotherapist, which encompasses licensed psychiatrists, psychotherapists, social workers, or other like counselors. *Awalt v. Marketti,* 287 F.R.D. 409, 423 (N.D. Ill. 2012) (citing *United States v. Schwensow*, 151 F.3d 650, 654 (7th Cir. 1998)). The rationale underlying the privilege is that a patient must have complete confidence in a psychotherapist to ensure effective therapy. *Id.* at 414 (citing *Jaffee,* 518 U.S. at 10). The privilege may be raised by the patient, his guardian, or his estate. *See Id.* at 415.

The party raising the privilege must show that it is applicable. *See Beard v. City of Chi.,* Case No. 03 C 3527, 2005 WL 66074, at *6-7 (N.D. Ill. Jan. 10, 2005). Regardless, the privilege would not prevent disclosure of the dates of the minor's treatment or the identity of his psychotherapists. *See Santelli v. Electro-Motive,* 188 F.R.D. 306, 310 (N.D. Ill. 1999). The privilege also can be waived. *See, e.g., Jaffee,* 518 U.S. at 15 n.14; *Beard,* 2005 WL 66074, at *7; *Santelli,* 188 F.R.D. at 308. Waiver of the psychotherapist-patient privilege arises frequently in civil litigation when the plaintiff claims damages for emotional distress, and federal courts faced with the issue have developed divergent approaches for ascertaining whether the privilege has been waived. *See Caine v. Burge,* Case No. 11 C 8996, 2012 WL 6720597, at *2

(N.D. Ill. Dec. 27, 2012) (discussing various approaches to the waiver issue).

Despite the general breadth of discovery, the Court may limit discovery that can be obtained from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefits. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) & (iii). Nonetheless, the party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. *Ott v. City of Milwaukee,* Case No. 09-C-870, 2011 WL 2116158, at *3 (E.D. Wis. May 25, 2011). If a party refuses to respond to a discovery request, the opposing party may move for an order to compel disclosure. Fed. R. Civ. P. 37(a).

Rule 26 allows for filing under seal for "good cause." Fed. R. Civ. P. 26(c). "The determination of good cause cannot be elided by allowing the parties to seal whatever they want." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir. 1999). The public "at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Id.* The judge is thus "duty-bound" to "review any request to seal the record." *Id.*

When information is filed with a court, it may "influence or underpin the judicial decision" and is therefore "open to public inspection unless" the information "meets the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.,* 297 F.3d 544,

545 (7th Cir. 2002). A motion asking to seal such information has "no prospect of success" unless it analyzes "in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 548. General assertions that the information is "commercial" or otherwise sensitive will not suffice. *Id.* at 546.

With respect to education records, FERPA reads:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records . . .

20 U.S.C. § 1232g(b)(1) (2009). One of the purposes for creating the statute was the concern over "the insertion of potentially prejudicial anecdotal comments and factual inaccuracies into children's school records." 121 Cong. Rec. 13990 (1975). "There has been clear evidence of frequent, even systematic violations of the privacy of students and parents by the schools through *the unauthorized collection of sensitive personal information and the unauthorized, inappropriate release of personal data to various individuals and organizations*." 121 Cong. Rec. 13991 (1975) (emphasis added). "[FERPA's nondisclosure provisions] have an 'aggregate' focus, . . . they are not concerned with 'whether the needs of any particular person have been satisfied.'" *Gonzaga Univ. v. Doe.* 536 U.S. 273, 288 (2002) (Citation omitted). "In each [of FERPA's] provisions the reference to individual consent is in the context of

- 8 -

describing the type of 'policy or practice' that triggers a funding prohibition." *Id.* "FERPA's nondisclosure provisions further speak only in terms of institutional policy and practice, not individual instances of disclosure." *Id.*

### Releases

No federal privilege protects the minor's medical records. Furthermore, with respect to the minor's mental health records, included in the proposed medical records release, Avina has not demonstrated that the psychotherapist-patient privilege applies to any record of any treatment provider. As noted, even if it did apply, the privilege neither extends to information about dates of visits or names of treatment providers nor applies to statements made to third-parties, such as insurance carriers.

However, the Defendants' medical release form is overly broad. Not all types of the minor's medical records sought by the release are relevant to this case. For example, the proposed release includes speech therapy and EKG records, which have no apparent relationship to this case. While medical records regarding a seemingly unrelated problem may sometimes lead to the discovery of admissible evidence, the medical release here must be revised to eliminate medical records without any apparent connection to this case such as those relating to speech therapy or EKG tests.

There is also a dispute as to the time frame for the records. Avina asserts that the minor's medical records beginning with his birth are not

relevant to the case and that the release should be limited to medical records post-dating September 30, 2009. In their briefs, the Defendants state that they want the minor's medical records beginning with October 1, 2002.

Why does Avina refer to the minor's records from birth on? The statement may arise from the contradictory language of the release as to the time frame of the records sought. Paragraph 4 of the form initially references medical records "*from October 1, 2002 to the present*;" however, the end of that paragraph references medical records "under your control now or in the future pertaining to the above-identified patient's physical or mental condition, or any treatment *the foregoing patient received from you at any time*." (Emphasis added.) While the 2002 to the present time frame is reasonable, the Defendants must revise the proposed release to (1) eliminate the reference to "at any time" and (2) eliminate medical records that have no apparent connection to the issues in this case such as speech therapy or EKG's. Once revised, Avina must sign the release by the stated deadline.

With respect to the minor's records, the cited congressional history and *Gonzaga* indicate that FERPA is intended to protect students and parents from a school's unauthorized release of a student's records. It was not designed to protect an individual, or one on whose behalf a lawsuit has been filed, from being required to authorize disclosure of school records which are relevant to the case. Thus, Avina must sign the release of the minor's school

records by the stated deadline.

In sum, the Defendants must revise the medical authorization form as required by this decision and Avina must sign it and the education record release form by the stated deadlines.

## SEALING AND PROPOSED PROTECTIVE ORDER

The parties' stipulated protective order states, "should any such information, documents, deposition testimony, affidavits, records or recordings be included in any court filing, said court filing shall be filed with the court under seal, and placed in an envelope marked 'Confidential.'" (ECF No. 54-1.) Avina also requests the sealing of all court proceedings in which the minor's medical and mental health records are presented. Based on the current record, neither sealing request is acceptable.

Avina has presented no facts to rebut the presumption of public access to evidence or documents that the defense may present at trial or file as a result of the discovery at issue. Moreover, a sweeping protective order sealing all materials subject to a protective order is contrary to Seventh Circuit case law which reflects the public's fundamental right to monitor this case in particular and the functioning of our federal courts in general. It also does not reflect this District's Civil L.R. 26(e) or 26(f). The latter states, "[a] party seeking to file a paper under seal must follow the procedure set forth in General L.R. 79(d)." *See also,* Civil L.R. 26(f) Comm. Comment ¶ 3. Based on

the foregoing, by the stated deadline the parties' proposed protective order must be revised to comply with the case law of this Circuit and this District's local rules regarding sealed filings or be withdrawn.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Defendants' motion to compel is **GRANTED** to the extent stated herein.

**No later than April 23, 2015,** Avina **MUST** provide the Defendants with a signed school record release;

**No later than April 23, 2015,** the Defendants **MUST** provide Avina with a revised medical release form;

**No later than April 30, 2015,** Avina **MUST** provide the Defendants with a signed medical release form; and

**No later than April 30, 2015,** the parties must submit a revised proposed protective order or withdraw the current proposed protective order.

Dated at Milwaukee, Wisconsin, this 16th day of April, 2015.

                                         **BY THE COURT:**

                                         */s/ Rudolph T. Randa*
                                         **HON. RUDOLPH T. RANDA**
                                         **U.S. District Judge**