# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ENRIQUE AVINA, *as parent and guardian of XXXX, a minor*,

                      Plaintiff,

v.

TODD BOHLEN, MIKE ROHDE, EDWARD A. FLYNN, CITY OF MILWAUKEE, and DOES 1–100,

                      Defendants.

Case No. 13-CV-1433-JPS

**ORDER**

## 1. INTRODUCTION

This case arises from a brief interaction between two Milwaukee police officers and Plaintiff Enrique Avina's son. On October 1, 2012, Plaintiff[1] was arrested by Defendants Todd Bohlen ("Bohlen") and Mike Rohde ("Rohde") for trespassing on the grounds of South Division High School in Milwaukee. The officers walked Plaintiff over to their squad car, and Bohlen took Plaintiff's hands behind Plaintiff's back for handcuffing. During the process, Bohlen raised Plaintiff's right hand a little more than halfway up Plaintiff's back. Surprisingly, this caused Plaintiff's upper right arm to break. Plaintiff thereafter brought this action, raising numerous constitutional and state-law claims against the officers, the City of Milwaukee, and the Milwaukee police chief, Edward A. Flynn ("Flynn").

Defendants filed a motion for summary judgment as to all of Plaintiff's claims on January 30, 2017. (Docket #98). Plaintiff responded on March 10,

---

[1] Enrique Avina is involved in this action only because his son is a minor. As a result, the Court's references to "Plaintiff" mean Enrique Avina's son, not him.

2017, (Docket #105), and Defendants replied on March 21, 2017, (Docket #119).[2] The motion is fully briefed and, for the reasons stated below, it will be granted.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir.

---

[2] Also on March 21, 2017, Plaintiff, with Defendants' consent, filed a motion for leave to file a third amended complaint. (Docket #116). In the third amended complaint, Plaintiff removed certain claims and defendants in this case. *See* (Docket #116-3). These include (1) all claims asserted against Flynn individually, (2) the false arrest, false imprisonment, and malicious prosecution claims asserted against officers Bohlen and Rohde, and (3) the *Monell* claim for negligent failure to train asserted against the City of Milwaukee. *See id.*; *see also* (Docket #119 at 2–3). The claims that remain are (1) excessive force and assault and battery against Bohlen and Rohde and (2) the *Monell* claim against the City for negligent retention of Bohlen. (Docket #116-3); (Docket #119 at 2–3). In light of Defendants' consent to the filing of an amended complaint, the Court will grant Plaintiff leave to file it. The Court will address in this order only those claims raised in the third amended complaint, which the parties appear to agree is still properly the subject of the present motion for summary judgment.

2010).

**3.     RELEVANT FACTS**

**3.1     Plaintiff's Failure to Dispute the Material Facts**

The relevant facts are undisputed because Plaintiff failed to dispute them. This is meant literally—it is not that Plaintiff filed a deficient response to Defendants' statement of facts, (Docket #99); he filed no response at all. The closest he comes is a 3-page factual summary at the beginning of his brief, (Docket #105 at 1–5), but this summary does not acknowledge, much less address, the factual assertions in Defendants' statement of facts.[3]

Accompanying Plaintiff's brief were thousands of pages of exhibits. *See* (Docket #105, #106, #107, #108, #109, #110, #111, #112, #113). Although Plaintiff cites some (though not all) of these exhibits in his brief, he almost never provides pinpoint citations. Instead, he typically only gestures at them with citations like "See Exhibits 1, 3, 4, 5, 6, 7, and 8." (Docket #105 at 2). This is not problematic for short exhibits comprising a few pages. But some of these exhibits are hundreds of pages long. For instance, Plaintiff's Exhibit 3 is the *entire* 109-page transcript of Plaintiff's deposition. (Docket #105-4).

Perhaps the most glaring example of the deficiencies in Plaintiff's submission come in connection with his *Monell* claims. To support those claims, Plaintiff attached hundreds of pages of complaints filed by citizens alleging excessive force by police officers, including several complaints directed at Bohlen specifically. *See* (Docket #106, #107, and #108). Plaintiff

---

[3]Plaintiff's brief, at forty-three pages long, was nearly half again longer than what is permitted by the Local Rules. *See* Civ. L. R. 56(b)(8)(A) (opposition brief limited to thirty pages). He did not seek leave to file this overlong brief as he was required to do. *See id.* 56(b)(8)(B). Nevertheless, because the Court will permit Defendants to file an overlong reply in light of Plaintiff's overlong response, *see* (Docket #114 and #117), the Court will not separately sanction this violation of its rules.

claims that he undertook a "detailed review" of these documents, (Docket #105 at 28), but he does not meaningfully explain their contents. Indeed, not a single individual complaint is discussed anywhere in his brief. Rather, he pushes the stack of complaints in the Court's direction and expects their sheer volume to carry the day.

Plaintiff's submission falls woefully, indeed shockingly, short of the requirements of the federal and local rules governing summary judgment procedure. Local Rule 56 requires the non-movant to file, in addition to a memorandum of law:

> (B) a concise response to the moving party's statement of facts that must contain:
>
> (I) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon, and
>
> (ii) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph. A non-moving party may not file more than 100 separately-numbered statements of additional facts[.]

Civ. L. R. 56(b)(2)(B). The Rule warns that "[t]he Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." *Id.* 56(b)(4). Similarly, Federal Rule of Civil Procedure 56 provides that a party seeking to dispute an asserted fact must cite to specific materials in the record which support such a dispute.

Fed. R. Civ. P. 56(c). If the party fails to do so, the Rule permits the court to deem the fact undisputed. *Id.* 56(e)(2).

These rules provide for the orderly disposition of cases "by ensuring that the proposed findings of fact are in a form that permits the district court to analyze the admissible evidence supporting particular factual propositions and determine precisely what facts, if any, are material and disputed." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). They are not "hyper-technical" and they do not turn litigation into a game of skill. *Id.* Instead, they provide "plain instructions" designed to "assist the court by organizing the evidence, identifying undisputed facts, and. . .imposing some discipline on the pretrial process." *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999).

Plaintiff ignored these rules, leaving the Court with the untenable task of sifting the evidentiary chaff from the wheat. However, "district courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("'Judges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). "[A] court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."). Particularly apt here is the Seventh Circuit's admonition that for purposes of summary judgment, "[c]itations to an entire transcript of a deposition or to a lengthy exhibit are

not specific and are. . .inappropriate." *Ammons*, 368 F.3d at 817–18; *Packer v. Trustees of Ind. Univ. Sch. of Medicine*, 800 F.3d 843, 848 (7th Cir. 2015) (finding that non-movant failed to dispute factual assertions through general citations to entire affidavits or deposition transcripts). Plaintiff's submission violates all of these principles.

In reviewing applications of a district court's local summary judgment rules, the Seventh Circuit has "repeatedly held that requiring strict compliance with [such rules] is not an abuse of the district court's discretion." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016); *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 671–72 (7th Cir. 2006). Indeed, even in cases brought by *pro se* plaintiffs, in which the Court must liberally construe the plaintiff's filings, the Court is entitled to strictly enforce the rules regarding summary judgment procedure. *See Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006). For a party represented by counsel, enforcement of these rules goes without saying.

The rules governing summary judgment procedure are critical in cases like this one, where there exists a huge factual record that must be reviewed against a litany of claims arising under diverse legal standards. Plaintiff's disregard for those rules cannot be countenanced. Consequently, the Court deems admitted each of Defendants' statements of material fact. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4). To be clear, it has not reviewed Plaintiff's evidentiary submissions to mine them for evidence. *Waldridge*, 24 F.3d at 923 (without the "roadmap" provided by a statement of facts, the district court "should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own"). It has considered only the statements of fact submitted by Defendants.

### 3.2 Facts Material to the Disposition of Defendants' Motion

Because Plaintiff has failed to dispute Defendants' proffered facts, the Court will summarize only those facts necessary to the disposition of Defendants' motion, viewing them in the light most favorable to Plaintiff. South Division High School is located in Milwaukee, Wisconsin at 1515 West Lapham Boulevard. Around October 1, 2012, the area around the school was plagued by gang violence, caused by a war between the Mexican Posse gang and the Latin Kings gang. Gang tensions and gang-related fights even broke out within the school itself. As a result, the high school requested that additional Milwaukee Police Department ("MPD") officers be assigned to the school.

On October 1, 2012, Bohlen and Rohde were assigned to the high school. Rohde is a nineteen-year MPD veteran, while Bohlen has twenty-three years of experience. Bohlen has received specialized training on gangs and had been specifically assigned the task of monitoring and gathering information on the Mexican Posse gang. Based on his training and ongoing experience with the Mexican Posse gang, he was able to identify known members at sight.

The officers arrived at South Division High School prior to the dismissal of classes for the day. They parked on the street in front of the main entrance. At the time they arrived, Plaintiff was gathered with a group of approximately eight to ten individuals outside the main entrance. The group included individuals known to be members of the Mexican Posse gang.

Plaintiff was a student at the school but had attended only one hour of class during the entire year. He skipped classes on this day as well. At approximately 3:00 p.m., after Plaintiff and his cohorts had been loitering outside the school for about fifteen to twenty minutes, the assistant principal,

Mr. Shapiro ("Shapiro"), approached them and told them to leave school property. They walked across the street.

By this time, classes had been dismissed and the road was congested with pedestrians and cars. Plaintiff's group began to harass pedestrians by yelling at them and flashing gang signs. Shapiro then approached Rohde and Bohlen and informed them that the group should not be on school property and that the group had previously been involved in gang-related fights at the school. Shapiro specifically identified Plaintiff, noting that he had only attended one hour of class all year, that he had not been reinstated as a student, and that, as a result, Plaintiff should not be on school property. Finally, Shapiro expressed concern about the group's presence during dismissal time given the heightened gang tensions and increased violence in the area.

Bohlen observed the group and recognized several individuals he knew to be Mexican Posse gang members. He did not recognize Plaintiff, but it was evident to him that Plaintiff was a member of the group. This led Bohlen to suspect that Plaintiff was associated with the Mexican Posse gang or was himself a member.

The officers watched the group harassing passersby and flashing hand signals they knew to be gang signs. Bohlen described their actions as creating "chaos." (Docket #101-2 154:6–17). The officers believed, based on Shapiro's statements and their observations, that the group was loitering. They were also concerned that the group's activity could escalate into violence. They therefore approached the group and told them to leave the area because they were being disruptive and could not be on school property.

In response, the group moved one block down the street and remained there for approximately fifteen to twenty minutes. During this time, Bohlen

Page 8 of 19

Case 2:13-cv-01433-JPS   Filed 03/31/17   Page 8 of 19   Document 122

and Rohde were patrolling the area in their vehicle, monitoring several groups of individuals. Bohlen identified several additional groups of Mexican Posse gang members in the vicinity. Also during this time, Plaintiff's group continued to harass pedestrians by arguing with them and displaying gang signs.

After fifteen to twenty minutes, officers Bohlen and Rohde observed that the group continued to harass pedestrians. They approached again and warned the group that if they did not disperse, they would be arrested. Most of them thereafter entered the house they were standing in front of (it was Plaintiff's cousin's residence) or dispersed. Plaintiff, however, rode his bicycle back across the street toward the high school and began talking to another individual near the school. Plaintiff allowed this person to hop on the back pegs of his bike and drove him down the sidewalk a short way. He ended up back on the school's front lawn, where he dropped off the individual. Because of his proximity to the school and front entrance walkway, it was obvious that Plaintiff was on school property.

After dropping this person off at the school, Plaintiff starting riding his bike across the street. Bohlen and Rohde stopped him in the grass-covered median in the center of the street. They had seen him ride back onto school property, and because he had received at least two previous warnings to leave the area and remain off of school property, they decided to arrest him for trespassing, in violation of Milwaukee Ordinance 110-10-1. The officers believed that because Plaintiff had ignored their prior warnings, a simple citation would not dissuade Plaintiff from continuing to loiter and be disruptive.

The officers ordered Plaintiff to get off the bike and put his hands behind his back. He did so. Bohlen had originally intended to handcuff

Plaintiff while they were standing on the median, but he decided that it would be safer to do so nearer to the squad SUV in light of the crowds of individuals and vehicles in the area. According to Plaintiff, Bohlen took hold of his right hand and arm, while Rohde took control of his left hand and arm. They escorted him to the front of the squad car. They said nothing to each other during this process. Once they got to the car, the officers leaned Plaintiff slightly against car such that his waist was touching the front bumper area of the SUV. He was not pushed onto the hood but was instead standing upright, with only his lower body touching the car.

Once in this position, Rohde let go of Plaintiff and Bohlen took control of both of Plaintiff's wrists. Bohlen then grabbed Plaintiff's right wrist with his right hand. Bohlen placed his left hand on Plaintiff's right upper arm near Plaintiff's shoulder. Plaintiff asserts that Bohlen then moved Plaintiff's right hand to "halfway or like a little bit past" halfway up Plaintiff's back. (Docket #101-1 36:4–25). The process of moving Plaintiff's arm in this fashion took 2–3 seconds. During this time, Rohde was not paying attention to Bohlen's actions and did not see the moment of injury.

As Plaintiff's arm was being moved in this way, Plaintiff says he felt a "pop" in his arm. This was his upper arm breaking. At no time prior to the "pop" did Plaintiff communicate to Bohlen or Rohde that he was in any discomfort or pain, nor that his arm felt stressed or over-stretched. As soon as Plaintiff expressed that he was in pain, Bohlen let go of him and allowed him to sit on the curb of the median. He called for medical attention and notified his supervisor of the injury.

As part of their initial and mandatory ongoing training, MPD officers are instructed on the proper use of force, including during handcuffing. The training covers both the physical methods of implementing force and the

legal and constitutional constraints on the application of force. Officers receive continuing instruction three to four times each year. Bohlen has complied with all such training requirements, and he understood that a police officer must limit his use of force to the amount reasonably necessary under circumstances to effectuate a law enforcement objective.

## 4. ANALYSIS

Applying the relevant legal principles to the undisputed facts, the Court finds that none of Plaintiff's claims have merit. The Court will address the claims in their logical order, starting with the allegations of excessive force and assault and battery, then the *Monell* claim.

### 4.1 Excessive Force and Assault and Battery

First are the claims against Bohlen and Rohde for use of excessive force in violation of the Fourth Amendment and assault and battery under Wisconsin law. As to the first claim, brought pursuant to 42 U.S.C. § 1983, Plaintiff must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Here, the relevant constitutional right is sited in the Fourth Amendment, which protects against the use of excessive force during investigatory stops and arrests. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

A claim of excessive force is judged against an objective standard of reasonableness. *Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir. 2006). In such cases, "[t]he dispositive question is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an 'objectively reasonable' manner." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (quoting *Graham*, 490 U.S. at 396–97). Three overarching factors inform this inquiry: (1) the severity of the crime at issue;

(2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest by flight. *Graham*, 490 U.S. at 396. The Seventh Circuit also directs courts to consider the type of injury suffered, *McAllister*, 615 F.3d at 881, whether the individual was under arrest or suspected of committing a crime, whether he was armed, and whether he was interfering or attempting to interfere with the officer's execution of his duties, *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). The Supreme Court has cautioned against over-critical hindsight judgments of police use of force, writing that

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers[,] violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a articular situation.

*Graham*, 490 U.S. at 396–97 (internal quotation marks and citations omitted). Objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

Plaintiff's claim for assault and battery under Wisconsin law is subject to similar standards. *Robinson v. City of West Allis*, 619 N.W.2d 692, 700 (Wis. 2000). In Wisconsin, a battery is an unauthorized intentional contact with another. *McCluskey v. Steinhorst*, 173 N.W.2d 148, 152 (Wis. 1970). Yet for police officers who are effecting an arrest, the use of reasonable force is privileged. *Wirsing v. Krzeminski*, 213 N.W.2d 37, 40 (Wis. 1973). This privilege analysis, like its constitutional counterpart, asks whether the force employed was objectively reasonable, considering the circumstances as they

appeared to the officer at the time he acted. *Robinson*, 619 N.W.2d at 700; *Johnson v. Ray*, 299 N.W.2d 849, 852 (Wis. 1981). The application of force will be found reasonable if it was that "'which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances.'" *McCluskey*, 173 N.W.2d at 148 (quoting 5 Am. Jur. 2d, Arrest, § 81 (1962)).[4]

On the undisputed facts before the Court, no reasonable jury could conclude that Bohlen or Rohde employed unreasonable force in effecting Plaintiff's arrest, notwithstanding his bizarre and severe injury. First, it is undisputed that Rohde did not make any physical contact with Plaintiff that caused him injury. In order for a police officer to be liable under Section 1983, he "must have personally caused or participated in the alleged constitutional deprivation." *Harper v. Albert*, 400 F.3d 1052, 1062 (7th Cir. 2005). Similarly, a Wisconsin battery claim requires unauthorized contact with the plaintiff. *See McCluskey*, 173 N.W.2d at 152. In this instance, Rohde had no part to play in Plaintiff's actual injury, nor is there any claim that he failed to intervene to protect Plaintiff from Bohlen's use of force. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003) (describing failure-to-intervene claim).

Further, Plaintiff cannot maintain his claim against Rohde on the assertion that Rohde's minimal touching of Plaintiff—which was limited to holding his left arm while walking him over to the squad car—itself constituted the use of excessive force. (Docket #105 at 16); (Docket #116-3 ¶¶ 30–33). Rohde was permitted to make contact with Plaintiff to effectuate an

---

[4]A cause of action for excessive force by a police officer under Wisconsin law requires a higher burden of proof—clear and convincing evidence—than an identical Section 1983 claim. *Shaw v. Leatherberry*, 706 N.W.2d 380, 390 (Wis. 2005). Because the evidence does not meet the lower preponderance standard applicable to Plaintiff's Section 1983 claims, this distinction makes no difference here.

arrest, and his contact with Plaintiff caused no appreciable injury. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (force not objectively unreasonable where there was probable cause to arrest and arrestee suffered minimal, if any, harm from overly tight handcuffs). Leading Plaintiff by the arm to the squad car was not unreasonable.

Likewise, the undisputed facts do not support a claim against Bohlen although he caused the injury in question. From those facts, it is clear that the analytical factors generally weigh in Plaintiff's favor. Plaintiff's crime, trespassing, was not severe; indeed, it was only an ordinance violation.[5] Further, Plaintiff did not pose a high risk of harm or flight, nor was he resisting arrest. Additionally, viewing the facts in a light most favorable to Plaintiff, it does not appear that Bohlen and Plaintiff were caught in a rapidly evolving or chaotic situation requiring split-second decision-making; instead, Bohlen was completing an arrest of a cooperative individual.

Nevertheless, the Court finds that Bohlen's behavior was not unreasonable under the circumstances. The Seventh Circuit has explained that an officer may not knowingly use force "in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). But "whether an officer knows that a given action unnecessarily will harm a particular individual will depend upon the circumstances of the arrest." *Id.* For some

---

[5]In light of the undisputed evidence in the record and Plaintiff's withdrawal of his challenges to the legality of his arrest, *see supra* note 2, there is no question that the officers had probable cause to believe that Plaintiff was trespassing on school property, in violation of Milwaukee City Ordinance 110-10-1. *See* (Docket #100 at 12–14); (Docket #119 at 8–9). As a result, Plaintiff relies too heavily on cases like *Black v. Hansen*, 885 F.2d 642, 645 (9th Cir. 1989), where the court's analysis of the reasonableness of the force employed was colored by the lack of probable cause to arrest the person. *See* (Docket #105 at 13).

applications of force, the nature of the act itself is enough to show that it would cause pain or injury. *Id.*; *see also Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (tackling arrestee and violently twisting her arms, causing significant injuries, was unreasonable in light of her minor offense and cooperative conduct); *Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir. 1987) (force was objectively unreasonable where officers kneed arrestee in the back and dragged her down a hallway). Even in cases where the act in question would not hurt an ordinary arrestee, the officer might be liable if he knows of the arrestee's special susceptibility to injury. *Id.*; *see also Frazell v. Flanigan*, 102 F.3d 877, 885 (7th Cir. 1996) (force applied could be viewed as unreasonable where officers knew that arrestee was having a seizure but used force anyway), *overruled on other grounds*, *McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002).

In this instance, in the space of 2–3 seconds, Bohlen held Plaintiff's right shoulder, turned Plaintiff's his right hand behind his back, and lifted Plaintiff's right hand to "halfway or like a little bit past" halfway up Plaintiff's back. (Docket #101-1 36:4–25). This action, had it not resulted in a broken limb, would be entirely ordinary and expected during the course of an arrest. It is not, as Plaintiff believes, automatically unreasonable simply because his arm broke. *See* (Docket #105 at 39). His case is unlike his primary citation, *Calamia v. City of New York*, 879 F.2d 1025, 1035 (2d Cir. 1989), where the officer shoved the arrestee to the floor without provocation and placed handcuffs painfully tight on him for 5–6 hours. Such conduct obviously has the potential to cause substantial injury, in contrast to simply preparing an individual's hands for cuffing. *See also Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 524 (7th Cir. 2012) (force was objectively unreasonable where officers shot the non-threatening arrestee multiple times with non-lethal bean-bag

shotgun); *Morfin*, 349 F.3d at 1005 (force was unreasonable where officers shoved a docile, cooperative arrestee to the floor and twisted his arm). Likewise, Bohlen's action could not be described as a gratuitous attempt to injure Plaintiff, as was the case in *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996), where an officer kicked a handcuffed arrestee into the back of the squad car.

Moreover, at no time before or during this process did Plaintiff indicate any susceptibility to injury beyond that of the average person. *See Rex v. City of Milwaukee*, 321 F. Supp. 2d 1008, 1013 (E.D. Wis. 2004) (arrestee informed officers prior to handcuffing that she had a condition that prevented her from placing her hands behind her back). Indeed, he did not even complain about Bohlen's act until after it broke his arm. Put simply, the break was unusual and seems to have come as a surprise to everyone involved—the officers and Plaintiff included. On this record, the Court is constrained to conclude that Bohlen's action, though it resulted in severe injury, was not objectively unreasonable under the circumstances. *See Stainback*, 569 F.3d at 773 (although it eventually resulted in two torn rotator cuffs, leaving handcuffs on arrestee despite his complaints of pain was not unreasonable since there was no indication he was particularly susceptible to such injury); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 594 (7th Cir. 1997) (placing arrestee in prone position on the floor was not application of unreasonable force when there was no indication to the officers that it would result in the arrestee's death); *cf. Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) (accidental or negligent infliction of harm is not actionable under

Section 1983). Therefore, summary judgment must be granted in Defendants' favor on Plaintiff's excessive force and assault and battery claims.[6]

### 4.2 *Monell* Claim

Finally, there is Plaintiff's *Monell* claim against the City of Milwaukee for its negligent retention of Bohlen.[7] Although *Monell v. Department of Social Services*, 436 U.S. 658 (1978), allows municipalities to be held liable under Section 1983, it does not allow a theory of *respondeat superior* against such entities. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011); *Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). Instead, "[m]isbehaving employees are responsible for their own conduct," and "'units of local government are responsible only for their policies, rather than misconduct by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). For municipal liability under Section 1983, the constitutional violation must be brought

---

[6]Plaintiff proffers an "alternative" theory for these claims in his brief, alleging that the entire course of the officers' conduct on the afternoon of October 1, 2012 constituted a continuous act of excessive force. (Docket #105 at 14–16, 2–3). Yet this theory relies on facts not properly presented in the record, including accusations that the officers drove erratically and in a threatening manner, and that the officers verbally harassed Plaintiff. *See id.* Consequently, this theory lacks a factual basis.

[7]In connection with this claim, Plaintiff cites only a single Wisconsin state court opinion providing the elements for a state-law negligent retention claim. (Docket #105 at 35–37). In every other instance of reference to this claim in the brief, it is fashioned as a Section 1983 *Monell* claim, not a state-law negligent retention claim. *See id.* at 24–37. Plaintiff's lone, seemingly misguided reference to state law cannot serve to amend the allegations of her complaint, which clearly recite the elements of a *Monell* claim and do not contain the elements of a Wisconsin negligent retention claim. (Docket #116-3 ¶¶ 42–50) (pleading that the City of Milwaukee had a policy or custom exhibiting deliberate indifference to citizens' Fourth Amendment rights which was the moving force behind Plaintiff's injury). Thus, although Defendants proceed to analyze this claim under state-law standards, (Docket #119 at 22–26), the Court finds it unnecessary to do so.

about by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with "final policymaking authority." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009); *see also Monell*, 436 U.S. at 694.

Here, Plaintiff claims that the City of Milwaukee, through its decisionmaker, Flynn, had a policy or practice which led to the retention of Bohlen as an officer despite a known danger that he would apply excessive force against arrestees. Yet, as demonstrated above, Plaintiff has not established that Bohlen or anyone else violated his constitutional rights. This is a fundamental prerequisite for any *Monell* claim. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014); *Houskins v. Sheahan*, 549 F.3d 480, 493–94 (7th Cir. 2008); *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [the plaintiff's] constitutional rights."). For this reason alone, the claim must be dismissed.

5.   **CONCLUSION**

This case has been pending for over three years and has consumed significant resources in the form of energy, time and expense on the part of the parties and their counsel, not to mention the Court and its staff. To be sure, the Court is dismayed that of necessity this litigation must be concluded in large measure as a consequence of Plaintiff's failure to comply with straightforward rules of civil procedure, including Federal Rule of Civil Procedure 1 which requires that these rules ". . . be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." For in the end, the rules are the rules– they say what they mean and mean what they say.

Thus, it should come as no surprise to anyone that counsel who choose to flout the rules do so at their peril. In this instance, where the Defendants' proffered material facts are undisputed, it simply means that Plaintiff's claims will not proceed to trial.

Accordingly,

**IT IS ORDERED** that Plaintiff's unopposed motion to file his third amended complaint (Docket #116) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' second motion for leave to file an oversized reply brief (Docket #117) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket #98) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge