# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| ENRIQUE AVINA, JR., | |
| Plaintiff, | Case No. 13-CV-1433-JPS |
| v. | |
| TODD BOHLEN, CITY OF MILWAUKEE, and DOES 1–100, | **ORDER** |
| Defendants. | |

This case arises from a brief interaction between two Milwaukee police officers and Plaintiff Enrique Avina, Jr. ("Avina"). On October 1, 2012, Avina was arrested by Todd Bohlen ("Bohlen") and Mike Rohde ("Rohde") for trespassing on the grounds of South Division High School in Milwaukee. The officers walked Avina over to their squad car, and Bohlen took Avina's hands behind his back for handcuffing. During the process of handcuffing, Avina's arm broke.

Avina thereafter brought this action. In his most recent and operative complaint, he raises three claims: (1) a claim under 42 U.S.C. § 1983 for excessive force, in violation of the Fourth Amendment, against Bohlen and Rohde; (2) a claim for assault and battery, in violation of Wisconsin law, against Bohlen and Rohde; and (3) a *Monell* claim under Section 1983 against the City of Milwaukee (the "City") for improper retention of Bohlen. (Docket #116-3); (Docket #122 at 2 n.2).[1]

---

[1] As the Court noted in its first summary judgment order, at times in his briefing Avina characterized this third claim as one for negligent retention under Wisconsin law. However, because his pleading was clearly aimed at stating a *Monell* claim under Section 1983, the Court treated it as such. (Docket #122 at 17

Defendants filed a motion for summary judgment as to all of these claims on January 30, 2017. (Docket #98). Avina failed miserably in his duty to dispute Defendants' proffered facts pursuant to the federal and local procedural rules. (Docket #122 at 3–6). As a result, the Court was obliged to find that all of Defendants' proffered facts were undisputed. *Id.*

On those undisputed facts, the Court determined that Rohde had no part in Avina's injury because he was not touching Avina at the time his arm broke. *Id.* 13–14. As for Bohlen, although he was the officer whose touch caused Avina's arm to break, the Court found that this appeared to be no more than an accident and that the amount of force Bohlen employed was not unreasonable under the circumstances. *Id.* at 14–17. Finally, the Court concluded that because no underlying constitutional injury was inflicted on Avina, the City could not be held liable under *Monell* for adopting a policy or practice that led to his injury—namely, retaining Bohlen as a police officer. *Id.* at 17–18. Consequently, the Court dismissed the action. *Id.* at 18–19.

Avina appealed, and the Court of Appeals affirmed in part and reversed in part. *Avina v. Bohlen*, 882 F.3d 674 (7th Cir. 2018). The Seventh Circuit affirmed the dismissal of the claims against Rohde. *Id.* at 679–80. However, it reversed as to the constitutional and state-law claims against Bohlen. It found that despite Avina's failure to meaningfully dispute the facts, a reasonable jury could infer that the amount of force Bohlen used was unreasonable. *Id.* at 678. Critical to the court's decision was the fact that for purposes of their summary judgment motion, Defendants conceded that Avina was "fully cooperative when Bohlen moved his arm up his back with

---

n.7). Avina's more recent brief confirms that he intends to press a *Monell* claim, not a claim under Wisconsin law. (Docket #143 at 8–9).

enough force to break it." *Id.* Avina's lack of resistance, coupled with the knowledge that ordinary instances of handcuffing cooperative suspects do not lead to broken arms, meant that a reasonable jury could find Bohlen's use of force was excessive. *Id.* at 679. This conclusion also required the Seventh Circuit to reverse the dismissal of the *Monell* claim, as that dismissal rested solely on the lack of an underlying constitutional violation, not any failure of proof as to the claim itself. *Id.*

The case is now back before the Court on remand. Defendants seek to renew their previously filed motion for summary judgment, asking the Court to rule on grounds not addressed in the prior order. (Docket #142). Specifically, Defendants ask for summary judgment on the *Monell* claim based on Avina's failure to properly state such a claim and his failure to provide minimally adequate evidence to support it. *Id.* They also seek a ruling on Bohlen's assertion of qualified immunity to Avina's damages claim under Section 1983. *Id.* Avina responded to the motion, arguing both that the request for a renewed appraisal of summary judgment is inappropriate, and that the renewed arguments are meritless in any event. (Docket #143).

For the reasons stated below, the Court will entertain Defendants' request for a ruling on their previously unaddressed summary judgment contentions. It finds that Avina has not proffered sufficient evidence to proceed to a jury on his *Monell* claim—even after being given a second chance to make arguments and provide evidence in support of it—and that Bohlen's assertion of qualified immunity must be denied at this time based on the state of the facts at summary judgment and the applicable standard of review.

1. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

2. **RELEVANT FACTS**

As noted above, Avina did not properly dispute the statements of material fact submitted by Defendants in connection with their motion for summary judgment. (Docket #122 at 3–6). The Court therefore found that all of Defendants' proffered facts were undisputed. *Id.* Avina conceded on appeal that this ruling was proper. *Avina*, 882 F.3d at 676 n.1. Moreover, he did not ask this Court to revisit that decision in response to Defendants' motion to renew their request for summary judgment. As a result, the Court

continues to find that all of Defendants' facts submitted on summary judgment are undisputed, except as specifically addressed in the Court's analysis below. What follows is a brief summary of those facts.

South Division High School is located in Milwaukee. In late 2012, the area around the school was plagued by gang violence, caused by a war between the Mexican Posse gang and the Latin Kings gang. Gang tensions and gang-related fights even broke out within the school itself. As a result, the high school requested that additional Milwaukee Police Department ("MPD") officers be assigned to the school.

On October 1, 2012, Bohlen and Rohde were assigned to the high school. The officers arrived at the school prior to the dismissal of classes for the day. They parked on the street in front of the main entrance. At the time they arrived, Avina was gathered with a group of approximately eight to ten individuals outside the main entrance. The group included individuals known to be members of the Mexican Posse gang.

Avina was a student at South Division but had attended only one hour of class during the entire year. He skipped classes on this day as well. At approximately 3:00 p.m., after Avina and his cohorts had been loitering outside the school for about fifteen to twenty minutes, the assistant principal, Mr. Shapiro ("Shapiro"), approached them and told them to leave school property. They walked across the street.

By this time, classes had been dismissed and the road was congested with pedestrians and cars. Avina's group began to harass pedestrians by yelling at them and flashing gang signs. Shapiro then approached Rohde and Bohlen and informed them that the group should not be on school property and that the group had previously been involved in gang-related fights at the school. Shapiro specifically identified Avina, noting that he had

only attended one hour of class all year, that he had not been reinstated as a student, and that, as a result, Avina should not be on school property. Finally, Shapiro expressed concern about the group's presence during dismissal time given the heightened gang tensions and increased violence in the area.

The officers watched the group as they harassed passersby and flashed gang signs. Bohlen described their actions as creating "chaos." (Docket #101-2 154:6–17). The officers believed, based on Shapiro's statements and their observations, that the group was loitering. They were also concerned that, given the presence of gang members in the group, the group's activity could escalate into violence. They approached the group and told them to leave the area.

In response, the group moved one block down the street and stood in front of Avina's cousin's house. They continued to harass pedestrians by arguing with them and displaying gang signs. After fifteen to twenty minutes, Bohlen and Rohde approached again and warned the group that if they did not disperse, they would be arrested. Most of them entered the house or dispersed. Avina, however, rode his bicycle back across the street toward the high school and began talking to another individual near the school. Avina allowed this person to hop on the back of his bike and drove him onto the school's front lawn.

After dropping this person off on the school lawn, Avina starting riding his bike across the street. Bohlen and Rohde stopped him in the grass-covered median in the center of the street. They had seen him ride back onto school property, and because he had received at least two previous warnings to leave the area and remain off of school property, they decided to arrest him for trespassing.

The officers ordered Avina to get off the bike and put his hands behind his back. He did so. Bohlen had originally intended to handcuff Avina while they were standing on the median, but he decided that it would be safer to do so nearer to the squad SUV in light of the crowds of individuals and vehicles in the area. Bohlen and Rohde escorted Avina to the front of the squad car and leaned him slightly against car such that his waist was touching the front bumper area of the SUV.

Once in this position, Rohde let go of Avina and Bohlen took control of both of Avina's wrists. Bohlen then grabbed Avina's right wrist with his right hand. Bohlen placed his left hand on Avina's right upper arm near Avina's shoulder. Avina asserts that Bohlen then moved Avina's right hand to "halfway or like a little bit past" halfway up Avina's back. (Docket #101-1 36:4–25). The process of moving Avina's arm in this fashion took 2–3 seconds. Avina was cooperative throughout this process and did not struggle or attempt to flee from Bohlen.

As Avina's arm was being moved in this way, Avina says he felt a "pop" in his arm. This was his upper arm breaking. At no time prior to the "pop" did Avina communicate to Bohlen or Rohde that he was in any discomfort or pain, nor that his arm felt stressed or over-stretched. As soon as Avina expressed that he was in pain, Bohlen let go of him and allowed him to sit on the curb of the median. He called for medical attention and notified his supervisor of the injury.

As part of their initial and mandatory ongoing training, MPD officers are instructed on the proper use of force, including during handcuffing. The training covers both the physical methods of implementing force and the legal and constitutional constraints on the application of force. Officers receive continuing instruction three to four

times each year. Bohlen has complied with all such training requirements, and he understood that a police officer must limit his use of force to the amount reasonably necessary under circumstances to effectuate a law enforcement objective.

**3.    ANALYSIS**

Defendants advanced two arguments in their motion for summary judgment which did not feature in the Court's original decision, as Avina's claims were disposed of without reaching those arguments. First, Defendants say that Avina's *Monell* claim is without merit because he has not coherently demonstrated that a policy, custom, or practice of the City led to his injury. Second, Defendants contend that Bohlen is shielded from Avina's claim for damages under Section 1983 by the doctrine of qualified immunity, notwithstanding the fact that he may have employed excessive force against Avina. Before reaching these arguments, the Court will address Avina's belief that there should be no revisiting summary judgment in the first place.

**3.1    Defendants' Renewed Request for Summary Judgment**

Avina urges the Court to reject Defendants' renewal of their summary judgment motion, contending that Defendants failed to proffer good reasons to do so. (Docket #143 at 2). According to Avina, Defendants were required to show some intervening change in the law, some new evidence, or a clear error in the prior ruling in order to be given a second chance at summary judgment. *Id.* This position misunderstands the controlling law.

The Seventh Circuit permits district courts the discretion to allow a party to renew a previously denied summary judgment motion, or to file successive motions, "particularly if good reasons exist" to do so. *Whitford v.*

*Boglino*, 63 F.3d 527, 530 (7th Cir. 1995). For instance, in *Whitford*, although the defendants had been denied summary judgment once, the Court of Appeals found that the district court did not abuse its discretion in permitting them to file a second motion for summary judgment which raised new legal arguments. *Id.* Although there is a preference for defendants to state all their arguments for relief at once, the district court acted within its discretion to permit the successive motion. *Id.*

Here, Defendants have asked the Court to rule on legal arguments that were fully addressed in the parties' original briefs but were not considered in the Court's order disposing of the case. The fact that the parties fully briefed these potentially dispositive arguments but Defendants were denied a ruling on them represents good cause to permit renewal of the summary judgment motion. Indeed, this case is quite unlike *Whitford*, on which Avina relies, where the defendants tried to make entirely new legal arguments in their second motion. Even there, the Seventh Circuit did not find that the district court acted inappropriately when it allowed the successive motion. If that is true, it cannot be said that a ruling on Defendants' previously stated arguments would be unfair to Avina.

Notably, this is not a situation where Defendants seek reconsideration of the Court's prior order, as Avina seems to believe. *See* (Docket #143 at 2). Instead, Defendants merely request a decision on arguments that were never touched by this Court or the Court of Appeals. The Seventh Circuit's reversal of summary judgment on the grounds that were addressed by this Court represents good cause to now issue a decision as to the grounds not previously considered. The Court therefore exercises its discretion to entertain Defendants' renewed request for summary judgment. *See Enlow v. Tishomingo Cnty., Miss.*, 962 F.2d 501, 507 (5th Cir.

1992) (whether to allow a successive summary judgment motion, even in the absence of new evidence, "best lies at the district court's discretion"). An analysis of the grounds raised in Defendants' renewed motion follows.

### 3.2 The *Monell* Claim

First, Defendants contend that Avina cannot prove a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell* allows municipalities to be held liable under Section 1983, but not on a theory of *respondeat superior*. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011); *Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985). Instead, "[m]isbehaving employees are responsible for their own conduct," and "'units of local government are responsible only for their policies, rather than misconduct by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). For municipal liability under Section 1983, the constitutional violation must be brought about by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with "final policymaking authority." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009); *see also Monell*, 436 U.S. at 694.

The Court originally disposed of Avina's *Monell* claim based on improper retention of Bohlen by finding that Bohlen had not employed unreasonable force against Avina, and thus there was no constitutional violation underlying the claim. This is a fundamental prerequisite for any *Monell* claim. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014); *Houskins v. Sheahan*, 549 F.3d 480, 493–94 (7th Cir. 2008); *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell*

if the policy did not result in a violation of [the plaintiff's] constitutional rights."). The Court's order said nothing of whether Avina's evidence sufficed to raise triable issues of fact on the existence of a policy, practice, or custom that gave rise to his injury. *See* (Docket #122 at 17–18).

The Court of Appeals reversed the dismissal of the *Monell* claim, finding that the facts, construed in Avina's favor, supported a jury finding that Bohlen did violate Avina's constitutional rights. *Avina*, 882 F.3d at 679. The appellate court made no other findings as to the claim. *Id.*

Defendants argued in their original briefing—and argue again now—that Avina has insufficient evidence demonstrating that any City policy, practice, or custom actually caused his injury. In the parlance of *Monell* cases, the challenged policy, practice, or custom must be the "moving force" behind the plaintiff's injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This can be shown directly by demonstrating that an express City policy is unconstitutional. *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000). The requisite causality can also be demonstrated indirectly "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion Cnty.*, 66 F.3d 151, 152 (7th Cir. 1995). Avina does not theorize that there is an express City policy in play here; instead, he believes there was a systemic failure to investigate Bohlen's misconduct and thereafter fire him.

Thus, to prove his claim of improper retention of Bohlen, Avina must have evidence that, if believed, would show that the City was deliberately indifferent to the danger posed by retaining Bohlen as an officer. *Harris*, 489

U.S. at 392. This standard of proof is necessarily high, for if the law were otherwise, it would allow *Monell* claims to proceed merely on evidence that the municipality could have done something differently to avoid the plaintiff's injury, which would "open municipalities to unprecedented liability under § 1983." *Id.* To ensure that municipal liability does not flow from mere negligence in supervising or training employees, "which would result in *de facto respondeat superior* liability," a plaintiff must show that the municipality's failure to train, supervise, or retain employees "reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.*

Avina's arguments in his original brief certainly fell short of proffering evidence that could support a jury finding in his favor on the causation requirement of his *Monell* claim. He cited only a decision of a Wisconsin state court on a claim of negligent retention. (Docket #105 at 35–37). He totally failed to grapple with the requirement under Section 1983 that municipal liability must be premised on deliberate indifference to a risk of harm, not mere negligence. The Court explained this to him, noting that

> [i]n connection with [his *Monell*] claim, Plaintiff cites only a single Wisconsin state court opinion providing the elements for a state-law negligent retention claim. (Docket #105 at 35–37). In every other instance of reference to this claim in the brief, it is fashioned as a Section 1983 *Monell* claim, not a state-law negligent retention claim. *See id.* at 24–37. Plaintiff's lone, seemingly misguided reference to state law cannot serve to amend the allegations of her complaint, which clearly recite the elements of a *Monell* claim and do not contain the elements of a Wisconsin negligent retention claim. (Docket #116-3 ¶¶ 42–50) (pleading that the City of Milwaukee had a policy or custom exhibiting deliberate indifference to citizens' Fourth Amendment rights which was the moving force behind Plaintiff's injury). Thus, although Defendants proceed to analyze this claim under state-law standards, (Docket #119 at 22–26), the Court finds it unnecessary to do so.

(Docket #122 at 17 n.7). Thus, his original brief did little to advance his *Monell* clam.

Now, in his brief in opposition to Defendants' instant motion, Avina offers what appears to be a more coherent defense of his *Monell* claim. He contends that investigations of citizen complaints against police officers such as Bohlen are not properly conducted, which in turn led to Bohlen being retained as an officer despite several complaints of excessive force. (Docket #143 at 7–10). Defendants retort that the Court should not consider this argument at all because it was not made in Avina's original summary judgment briefing. (Docket #144 at 12). Because this theory for the *Monell* claim still fails to cross the necessary threshold to go before a jury, the Court will not resolve whether Avina waived his newly minted arguments by failing to present them in his original briefing.

The failure of proof begins with Avina's failure to dispute the material facts in his original submissions or properly submit any of his own proposed facts. In particular, while cataloging Avina's woefully inadequate evidentiary submissions, the Court observed that

> [p]erhaps the most glaring example of the deficiencies in Plaintiff's submission come in connection with his *Monell* claims. To support those claims, Plaintiff attached hundreds of pages of complaints filed by citizens alleging excessive force by police officers, including several complaints directed at Bohlen specifically. *See* (Docket #106, #107, and #108). Plaintiff claims that he undertook a "detailed review" of these documents, (Docket #105 at 28), but he does not meaningfully explain their contents. Indeed, not a single individual complaint is discussed anywhere in his brief. Rather, he pushes the stack of complaints in the Court's direction and expects their sheer volume to carry the day.

(Docket #122 at 3–4).

In his original brief, when trying to argue that many complaints have been filed against Bohlen for breaking the arms of arrestees, Avina simply cited "Exhibits 20 and 21," which include hundreds of pages of citizen complaints against MPD officers. (Docket #105 at 31). Later on, he claimed that Bohlen has "had a multitude of prior complaints," including five for breaking someone's arm or wrist, and some number of others for using "racial slurs" and "extreme violence." *Id.* at 36–37. No citation at all was provided. Likewise, Avina baldly stated, without reference to evidence, that the MPD does not effectively or ethically investigate citizen complaints, since officers do not question all available witnesses and MPD policy places the burden on the complainant to prove his allegations. *Id.* at 32.

Whether or not the theory is sound, what was missing throughout Avina's original submissions were citations to relevant, admissible evidence. Avina offered no accompanying statement of facts explaining the contents of the citizen complaints or the investigations. Instead, he expected the Court to read the hundreds of pages of complaints and agree with him that they were relevant and showed a practice of inadequate investigation leading to improper retention. This is not the Court's task. *Herman v. City of Chi.*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."); *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("The federal courts will not invent legal arguments for litigants."). Thus, not only did Avina fail to dispute Defendants' factual assertions, he also did not succeed in presenting even a single one of his own, and his morass of supposed *Monell* evidence is not properly before the Court.[2]

---

[2]Even where Avina discussed one—and only one—citizen complaint investigation other than his own, he did not provide a citation to the complaint,

Avina's more recent submissions do not remedy this error. In his current brief, he cites scattered bits of mostly inadmissible evidence which cannot support a charge of deliberate indifference even when construed in his favor. Take the original mass of citizen complaints. All are filled to the brim with inadmissible hearsay, as they are out-of-court statements used to prove the truth of their contents—namely, that Bohlen did use excessive force against the complaining individuals. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Avina does not try to overcome Defendants' hearsay objection, *see* (Docket #143 at 8–9), nor has he submitted affidavits from these persons attesting to the contents of their complaints, as would be permitted on summary judgment, *Eisenstadt*, 113 F.3d at 742–43.

Undeterred by evidentiary shortcomings, Avina contends that the prior complaints against Bohlen are so factually similar to his case that those complaints, if properly investigated, should have led to Bohlen's termination and would have spared him from injury at Bohlen's hands. (Docket #143 at 8–9). Yet Bohlen was cleared of wrongdoing in each and every complaint upon which Avina relies. (Docket #119 at 23). Thus, even were the hearsay objection overcome, the complaints undercut his claim rather than support it. *J.G. ex rel. Koss v. Lingle*, No. 13-CV-414-SLC, 2014 WL 4273269, at *10 (W.D. Wis. Aug. 28, 2014). And it should be remembered that Avina's own injury cannot support the existence of an unconstitutional policy or practice, for the practice must be in place at the time of the

---

and the Court did not and will not scour the hundreds of pages of complaints filed with his brief to verify his statements about the complaint's contents. *See* (Docket #105 at 33–34). Thus, his freewheeling speculation about misconduct during these investigations remains untethered from evidence.

plaintiff's injury in order to give rise to *Monell* liability. *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005).

Perhaps in recognition of the low evidentiary value of these citizen complaints, Avina turns on the MPD's investigatory practices in response to such complaints. Avina may take exception to the MPD's investigatory practices, and flawed investigatory practices might bolster his *Monell* theory, but here again much of his evidence is non-existent. For example, he speculates that the investigations were "severely flawed," claiming that he will call at trial some unidentified representative from the Wisconsin State Medical Board to testify that one of the doctors named in one of the complaints does not exist. (Docket #143 at 9). He does not name the representative or cite any sworn statement by that person; he simply says that they will testify as he claims and that, as a result, the report in question was fabricated. *Id.*

Empty speculation about the prospective testimony of an unidentified witness is simply not what summary judgment is about. For this reason, Avina's primary citation, *Johnson v. Shasta County*, 83 F. Supp. 3d 918 (E.D. Cal. 2015), is inapposite. There, the court addressed a motion to dismiss and found that the allegations of the complaint, taken as true, established that the municipality was deliberately indifferent to officer misconduct because it failed to adequately investigate complaints. *Id.* at 932. Avina faces a higher burden at summary judgment. This is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). His conclusory arguments that the evidence will be as he says are not enough.

Beyond the unidentified witness, Avina's second angle of attack on the complaint investigation process is that it is confusing. True, there are two investigation processes handled by two different departments—one by the Milwaukee Fire and Police Commission ("FPC") and one by the MPD. (Docket #143 at 8). Yet other than simply stating that having two processes is confusing, Avina provides no evidence that anyone—even he—was actually confused. Moreover, the processes are not confusing simply because there are two. As explained by Defendants, citizens can file complaints against police officers by requesting a supervisor during contact with an officer, by going in person to an MPD district office, or by filing a complaint with the FPC. (Docket #99 ¶ 116). Complaints filed with the FPC are investigated by the FPC while complaints filed with the MPD are investigated by the MPD internal affairs division. *Id.* ¶ 117.

Avina maintains that, based on the testimony of MPD Lieutenant Timothy Leitzke ("Leitzke"), complainants are often unware of how to make proper complaints and are confused by the process. (Docket #143 at 8). But where is the evidence? Avina's entire line of reasoning is as follows:

> A proper investigation of citizen complaints cannot be expected in an inconsistent system that the citizens are unaware of how to file the complaint or assist in the investigation. (Dep. of Leitzke at 23:2-25; 26:4-25.) Further, Officer Leitzke admitted that the complaint investigation process is flawed and could be improved, and that a person's education level could prohibit them from conveying information into the form. (Dep. of Leitzke at 47: 9-14; 49:16-25; 50:1-15). As a result Defendant Officer Bohlen was not properly disciplined for the multiple complaints against him or terminated from his position. See Exhibit 21.

(Docket #143 at 8).

In his deposition, Leitzke described the MPD's citizen complaint processes, noting that an MPD officer at the police station would, if asked, help a citizen fill out a form by directing him or her where to put certain information. (Docket #111-1 24:22–25:18). He noted that the individual complainant's education and intellectual ability could affect his or her ability to fill out a complaint, as the attendant MPD officer will not write the complaint for them. *Id.* 49:3–50:3. However, Leitzke maintained that stating a complaint in plain language would usually not be difficult, particularly since the investigator assigned to the complaint will contact the complainant to discuss the matter and flesh out the details. *Id.* 50:4–15. Leitzke admitted that the MPD's complaint process "could be improved" by making complaint forms available online but was not "terribly flawed." *Id.* 47:9–14.

Avina's gloss on Leitzke's testimony grossly overstates his reservations about the MPD complaint process. Notably, the only improvement he saw as beneficial would be to make the complaint forms available over the internet, which has nothing to do with how well the investigations are ultimately carried out. To read Leitzke's testimony as Avina does goes too far into the realm of unsupported speculation and conjecture. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) ("[O]ur favor toward the nonmoving party does not extend to drawing '[i]nferences that are supported by only speculation or conjecture.'") (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008)).

Moreover, recall that Avina challenged none of Defendants' statements of fact relating to the complaint processes submitted in connection with their summary judgment motion. Thus, it is undisputed for purposes of summary judgment that there are robust procedures

employed to investigate citizen complaints about officer misconduct, including review by an independent investigator who interviews the complainant and identified witnesses, searches for unidentified witnesses and interviews them, and gathers any other relevant evidence, including information about the officer's complaint history, before determining the validity of the complaint. (Docket #99 ¶¶ 116–20). Additionally, an internal board of the MPD reviews every use of force resulting in citizen injury or death to ensure compliance with the law and MPD policy. *Id.* ¶¶ 123–29. Further, Bohlen has met all continuing training and certification requirements relating to the use of force. *Id.* ¶¶ 137–39. Consequently, on his best day Avina has only hinted at some minor flaws in the investigation of police misconduct while leaving the vast body of relevant evidence to the contrary unperturbed.

Finally, assuming that it is reasonable to infer that the complaint process is seriously flawed based on Leitzke's testimony—and to be sure, it is not—the logical leap between that proposition and the conclusion—that, as a result of the flawed investigatory procedures, "Defendant Officer Bohlen was not properly disciplined for the multiple complaints against him or terminated from his position"—is enormous and unsupported by the evidence. (Docket #143 at 8). As the Seventh Circuit has emphasized, summary judgment requires the drawing of reasonable inferences in the non-movant's favor, "not every conceivable inference." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987); *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014).

Avina's evidence creates no colorable connection between one officer's suggestions for improving the investigation process and Bohlen's retention. It must be remembered that the focus of the *Monell* claim is on

whether it was proper to retain Bohlen despite knowing he was overly aggressive toward arrestees; the claim is not framed as a challenge to investigatory practices *per se*. Thus, the evidence must support a reasonable inference that the City was on notice of Bohlen's repeated wrongdoing, and it does not. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (policymakers cannot be deliberately indifferent to a risk unless they were actually aware of it or it was persistent, widespread, and obvious).[3]

In sum, to prove his *Monell* claim, Avina proffers sweeping conjecture about the complaint investigation process and one potential case in which some unknown person may be able to undermine part of the investigation. This is not enough to create genuine issues for trial. *Argyropoulos*, 539 F.3d at 732. As a result, the Court is obliged to grant summary judgment to Defendants on Avina's *Monell* claim.

### 3.3    Qualified Immunity

Defendants' other renewed argument is that the doctrine of qualified immunity shields Bohlen from liability for damages under Section 1983. (Docket #142 at 3–4). Qualified immunity protects government officials from liability for damages under Section 1983 to the extent their conduct does not violate "clearly established statutory or constitutional rights of

---

[3]Likewise, the theory for this claim is only improper retention of Bohlen himself after citizen complaints and cursory investigations; Avina had previously alleged a *Monell* claim based on failure to train and discipline Bohlen with respect to the application of force, but he omitted that claim from his third amended complaint. (Docket #116-3); (Docket #122 at 2 n.2). Evidence relating to the failure-to-train and failure-to-discipline *Monell* claims is not relevant to the retention claim. To prove the former, Avina could potentially rely on a broad body of evidence showing systemic overuse of force by MPD officers and the City's failure to implement more training or discipline in response. But for the much more specific claim that Bohlen should not have been retained in light of his overuse of force, the City's deliberate indifference could only arise from information that *Bohlen* was a repeat violator of excessive force policies. This he has not shown.

which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine the applicability of qualified immunity on summary judgment, a court must engage in a two-part analysis to determine: (1) whether the facts, viewed in the light most favorable to the non-movant, establish the violation of a constitutional right; and (2) whether the constitutional right at issue was "clearly established" at the time of the official's purportedly illegitimate conduct. *Id.* at 232; *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). The first element has been established by the Court of Appeals' reversal in this case. *Avina*, 882 F.3d at 679. The second element remains in dispute.

"To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (citation omitted). "This is a high bar." *Kramer v. Pollard*, 497 F. App'x 639, 642 (7th Cir. 2012). The Supreme Court has emphasized that "the clearly established law must be 'particularized' to the facts of the case. . . . Otherwise, plaintiffs would be able to convert the rule of qualified immunity. . .into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). To defeat a qualified immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White*, 137 S. Ct. at 551 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

Qualified immunity serves to shield officials from suit in cases involving "gray areas" of constitutional rights. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992); *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987) (a rejection of qualified immunity requires "that in the light of pre-existing law the unlawfulness [of a defendant's actions] must be apparent"). The Supreme Court very recently explained that

> "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Id.*, 136 S. Ct., at 309 (internal quotation marks omitted and emphasis deleted). Precedent involving similar facts can help move a case beyond the otherwise "hazy border between excessive and acceptable force" and thereby provide an officer notice that a specific use of force is unlawful. *Id.*, 136 S. Ct., at 312 (internal quotation marks omitted).

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018).

However, against these principles of leniency toward officers the Court must balance the standard of review at summary judgment, which is quite generous to a non-movant seeking to overcome an assertion of qualified immunity. While the non-movant must show that the particular conduct in question was clearly unlawful under existing law, the particularized version of events used to make that assessment is taken from the undisputed facts as construed in his favor. *See Williams v. Ind. State Police Dep't*, 797 F.3d 468, 484 (7th Cir. 2015). Thus, at summary judgment, Avina

can avoid an assertion of qualified immunity if the facts and reasonable inferences therefrom, drawn in his favor, show that the right in question was clearly established. *See Kisela*, 138 S. Ct. at 1159 (Sotomayor, J., dissenting) (contending that the majority failed to take the facts and inferences therefrom in the non-movant's favor when characterizing the officer's conduct). Whether the facts ultimately adduced at trial support such a finding is a different matter that cannot be decided at this juncture.

In light of the deferential standard of review, the Court is obliged to conclude that Bohlen is not entitled to summary judgment on the basis of qualified immunity. The Court of Appeals' explanation of the proper recitation of the facts makes this result plain. The Seventh Circuit found that Bohlen arguably applied unreasonable force when he broke Avina's arm during an ordinary instance of handcuffing during which Avina was in no way resistant. *Avina*, 882 F.3d at 679. As the court observed, "[i]t strains the imagination to envision a scenario in which an officer could place a cooperative suspect's hands behind his back and break his arm if the officer were using a reasonable amount of force." *Id.*

Under the framework of qualified immunity, it is beyond debate that a broken arm should not have resulted from the circumstances of Avina's arrest and handcuffing as presented at summary judgment. Indeed, Defendants ignore the standard of review when they say that the handcuffing was done in the context of a chaotic scene where gang members and others milled about, and only a little force was applied over the course of only a few seconds. (Docket #119 at 15). That may be how the evidence plays out at trial, but construing the facts in this way is contrary to the standard of review, as the Court of Appeals' decision reveals. The proper way to frame the factual context here is that Avina was compliant

and that handcuffing a compliant arrestee does not in the normal course lead to a broken limb.

True, Avina has not identified an on-point case addressing use of force during handcuffing, but even general statements of law will suffice to place officers on notice when the unreasonableness of their conduct is obvious. *White*, 137 S. Ct. at 552; *Kisela*, 138 S. Ct. at 1153. That is the state of the record at this juncture—any reasonable officer would understand that applying enough force to break the arm of a motionless, compliant arrestee would violate the protections of the Fourth Amendment. *See Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) ("In some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself."). At the time of Avina's arrest, it was clearly established that an officer may not use excessive force against an individual during an arrest. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007). It was also clearly established that "using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force." *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (citing *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995)); *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003). To be sure, the parties will dispute at trial the events leading to Avina's injury, but because the Court must credit Avina's view of those events at this stage of the proceedings, the Court must deny Bohlen's request for summary judgment on the basis of qualified immunity. The defense may be reasserted as appropriate based on the evidence adduced at trial.

## 4.  CONCLUSION

For the reasons stated above, the Court finds it appropriate to entertain Defendants' renewed request for summary judgment on grounds not addressed in this Court's prior order or in the Court of Appeals.

Consideration of those grounds necessitates dismissal of Avina's *Monell* claim and, concurrently, dismissal of the City of Milwaukee as a defendant. However, the Court must deny summary judgment to Bohlen on the issue of qualified immunity, as the facts, viewed through the appropriate standard of review, show that the constitutional right Bohlen violated was clearly established at the time of the challenged conduct. As a result, this matter will proceed to trial on the two claims against Bohlen: one for excessive force, in violation of the Fourth Amendment, under Section 1983, and the other for assault and battery, in violation of Wisconsin law.

Accordingly,

**IT IS ORDERED** that Defendants' renewed motion for summary judgment (Docket #142) be and the same is hereby **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that Plaintiff's *Monell* claim against the City of Milwaukee be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that the City of Milwaukee be and the same is hereby **DISMISSED** from this action.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2018.

BY THE COURT:

J. P. Stadtmueller
U.S. District Court